Ideal Tool and Die Co., Inc., et al. [1] v. Commissioner. Ideal Tool & Die Co. v. Commissioner
Docket Nos. 67833-67840.
United States Tax Court
T.C. Memo 1960-96; 1960 Tax Ct. Memo LEXIS 193; 19 T.C.M. (CCH) 502; T.C.M. (RIA) 60096; May 13, 1960
*193 Eugene J. Steiner, Esq., for the petitioners. Clarence P. Brazill, Jr., Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined the following deficiencies in income tax and additions to tax for the years indicated: Ideal Tool and Die Co., Inc. - Docket No. 67833
Year
Deficiency
1951
$ 751.71
1952
7,234.66
1953
8,551.11
John Jesionowski and Catherine Jesionowski
Docket No. 67834
Additions to tax -
I.R.C. of 1939
Sec.
Sec.
Year
Deficiency
294(d)(2)
294(d)(1)(A)
1951
$1,591.53
$154.29
$180.01
1952
6,570.42
615.28
717.83
1953
7,253.69
441.78
515.42
Casimer Jesionowski - Docket No. 67835
1951
$ 171.00
$ 13.05
$ 15.23
1952
603.53
163.92
191.24
1953
698.08
55.57
64.82
Henry Jesionowski - Docket No. 67836
1952
$ 843.28
$175.29
$204.51
1953
434.00
24.69
28.81
Thaddeus F. Jesionowski - Docket No. 67837
1951
$ 987.54
$ 56.03
$ 65.38
Thaddeus F. Jesionowski - Docket No. 67838
1952
$1,681.64
$209.36
$244.25
1953
1,350.32
78.11
110.65
Walter Jesionowski and Mary Jesionowski
Docket No. 67839
1952
$1,141.82
$200.93
$284.65
1953
1,195.71
73.49
85.74
Walter Jesionowski - Docket No. 67840
1951
$ 184.22
$ 17.71
*194 Because of similar questions of fact and law these eight dockets were consolidated at trial. The issues to be decided are: (1) Whether respondent correctly disallowed, in part, deductions for amounts paid by petitioner, Ideal Tool and Die Co., Inc., to various members of the Jesionowski family as rental for the use of machinery, automobiles and real property owned by them; (2) Whether respondent correctly disallowed deductions for amounts claimed as automobile expense by petitioner, Ideal Tool and Die Co., Inc.; (3) Whether respondent correctly disallowed amounts claimed as deductions by the individual Jesionowskis for depreciation, operating expenses, maintenance and repairs on the said machinery and automobiles; (4) Whether respondent correctly excluded from the income tax returns of petitioner Thaddeus Jesionowski and included in the income tax returns of petitioners John and Catherine Jesionowski certain amounts of rental income, repairs and expenses attributable to certain real property located at Chrisler Avenue in Schenectady, New York; (5) Whether the respondent's disallowance of certain itemized deductions in the several petitioners' income tax returns was correct; *195 and (6) Whether respondent correctly determined additions to tax for the several petitioners under sections 294(d)(1)(A) and 294(d)(2) of the Internal Revenue Code of 1939. [2]
Findings of Fact Some of the facts have been stipulated by the parties and are found accordingly. Petitioner in Docket No. 67833, Ideal Tool and Die Co., Inc. (hereinafter sometimes called Ideal) is a New York corporation. Its main office and plant are located in Schenectady, New York. It filed income tax returns for the year 1951 with the then collector of internal revenue and for the years 1952 and 1953 with the district director of internal revenue for the 14th District of New York at Albany, New York. Petitioners in Docket No. 67834, John Jesionowski (hereinafter called John) and Catherine Jesionowski, his wife; petitioner in Docket No. 67835, Casimer Jesionowski (hereinafter called Casimer); petitioner in Docket No. 67836, Henry Jesionowski (hereinafter called Henry); petitioner in Docket Nos. 67837 and 67838, Thaddeus F. Jesionowski (hereinafter called Thaddeus); petitioners in Docket No. 67839, Walter Jesionowski *196 (hereinafter called Walter) and Mary Jesionowski, his wife; and Walter in Docket No. 67840, all filed timely income tax returns for the years in question with the then collector or district director of internal revenue for the 14th district of New York. For some of the years in question John, Thaddeus and Walter filed joint returns with their wives; all other individual petitioners filed individual returns. All individual petitioners lived in Schenectady during the years in question with the exception of Henry, who lived in Albany, New York, for part of 1953. John had been in the tool and die business for a number of years. Prior to 1944 he had operated as a sole proprietorship. In 1944 John and two of his sons, Thaddeus and Casimer, incorporated the business as Ideal Tool and Die Co., Inc. John's other two sons, Walter and Henry, were associated with Ideal during the years here in question. From 1944 to 1951 Ideal manufactured tools and dies which require a high degree of precision in their production. In 1951, after the outbreak of the Korean war, Ideal began to receive contracts from various firms to manufacture certain parts, tools, dies and fixtures of a sort requiring less *197 precision in their manufacture than theretofore required. Its principal contract was with the General Electric Company of Schenectady to manufacture bucket parts for turbines. The new orders were such that Ideal was required to expand its production capacity by using more machines, increasing the number of employees and the number of hours worked per week. In order to fill the new orders it was necessary to acquire machines which could manufacture articles with less precision than normally required. Machines of this type were in great demand and short supply at that time. New machines, when available, were costly. Used machines were often quite old and of marginal efficiency. In addition, the Jesionowskis, officers of Ideal, recognized that when the Korean conflict ended Ideal might have little or no use for much of the machinery then needed. With these factors in mind the Jesionowskis embarked on a search for machinery which could be used to meet Ideal's new production orders. For a number of years it had been the Jesionowskis' practice to purchase machinery in their individual capacity and to rent it to Ideal. Ideal owned, operated, maintained and depreciated some of the machinery *198 used in its manufacturing processes. During the years in question the Jesionowskis acquired, owned and maintained certain machines which Ideal used in the corporate business and on which it paid rental. Ideal, on its income tax returns, claimed $9,150 in 1951, $36,570 in 1952 and $38,167.05 in 1953 as deductions from gross income for rental expense. The stated amounts are there shown as gross rental expense only. No allocation is shown for these amounts among the several separate categories of objects rented. Nor is there any indication on Ideal's tax returns of the specific amounts paid the individual Jesionowskis as machinery rental. The Jesionowskis' income tax returns, taken together, report a total of $9,200 in 1951, [3] $36,136 in 1952 and $40,567.05 in 1953, received as rental payments from Ideal for machinery, automobiles and the factory premises. The Jesionowskis' income tax returns for the years in question report amounts received from Ideal for machinery rental as follows: 1951
1952
1953
John Jesionowski
$3,700
$18,650
$13,901.05
Casimer Jesionowski
400
750
1,150.00
Thaddeus Jesionowski
1,550
4,250
5,100.00
Walter Jesionowski
50
3,850
3,850.00
Henry Jesionowski
0 [3]
900
1,100.00
*199 Respondent, in Ideal's notice of deficiency for the years in question, disallowed in part the deductions claimed by Ideal as rental expense. In the explanation of adjustments attached to the statutory notice respondent computed the machinery rental adjustments for each year by allowing as machinery rental expense 20 per cent of the total cost of the machines rented or the total amount of rental reported as received by the individual Jesionowskis, whichever was lower. The following machines were owned by the individual Jesionowskis in the years in question and were rented to Ideal: JOHN JESIONOWSKI MACHINERY
Owned
Original
No.
Description
During 195-
Cost
1.
Lathe
1, 2
$1,800.00
2.
Lathe
1, 2, 3
2,000.00
3.
Jig Borer
1
4,313.00
4.
Drill press
1, 2
400.00
5.
Turret Lathe
1
1,500.00
6.
Hendy Lathe
1, 2, 3
1,250.00
7.
Foster Turret Lathe
1, 2, 3
1,500.00
8.
Bullard Boring Mill
1, 2, 3
5,500.00
9.
Cincinnati Planer
2, 3
8,250.00
10.
Universal Crank
2, 3
2,500.00
Shaper
11.
Lucas Boring Mill
2, 3
7,000.00
12.
Lifter
1, 2, 3
400.00
13.
Norton Grinder
2, 3
2,000.00
14.
Blanchard Grinder
2, 3
4,000.00
15.
Reid Grinder
3
2,201.05
16.
Kempsmith Miller
1, 2, 3
1,900.00
17.
Planer
2, 3
1,000.00
CASIMER JESIONOWSKI MACHINERY
18.
Shaper
1, 2, 3
850.00
HENRY JESIONOWSKI MACHINERY
19.
Kempsmith Milling Ma-
chine
2, 3
1,500.00
THADDEUS JESIONOWSKI MACHINERY
20.
Undescribed machines
owned only during
1951
2,450.00
21.
South Bend Lathe
2, 3
1,709.00
22.
Grinder
2, 3
1,754.00
23.
Bench Lathe
2, 3
460.00
24.
Bench Lathe
2, 3
460.00
25.
Reid Grinder
3
2,201.05
WALTER JESIONOWSKI MACHINERY
26.
Acme Auto. Lathe
1, 2, 3
900.00
27.
Acme Turret Lathe
2, 3
2,850.00
28.
Norton Grinder
2, 3
2,000.00
29.
Do-All Welder
2, 3
425.00
30.
Lathe
2, 3
500.00
*200 All of the Jesionowskis except John owned automobiles during the years in question. Ideal rented these automobiles for use in the corporate business to pick up and deliver manufactured parts, in travel connected with soliciting and securing orders and with the purchase and maintenance of machinery. Ideal claimed amounts paid to the individual Jesionowskis for the use of their automobiles as a rental expense deduction. As indicated above, Ideal's income tax returns for the years in question show only amounts claimed as gross rental expense: no allocation is made of the portion of the total allocable to automobile rental or of the individuals to whom it was paid. The Jesionowskis' individual income tax returns report income received from Ideal for automobile rental as follows: 1951
1952
1953
Casimer Jesionowski
$250
$1,750
$2,500
Thaddeus Jesionowski
950
1,450
1,550
Walter Jesionowski
300
1,200
1,200
Henry Jesionowski
0 [4]
1,300
1,300 Respondent, in Ideal's notice of deficiency for the years in question, disallowed in part the deductions claimed by Ideal as rental expense. In the explanations of adjustments *201 attached to the statutory notices respondent computed the automobile rental adjustments for each year by allowing as automobile rental expense one-third of the cost of the automobiles rented or the total amount of rental reported as received by the individual Jesionowskis, whichever was lower. Facts concerning the said automobiles used for business purposes are as follows: Owner
In Use
No.
Description
During 195-
Cost
CASIMER JESIONOWSKI
1.
1947 Studebaker
1, 2
$1,850.00
2.
1952 Dodge
2, 3
2,572.00
HENRY JESIONOWSKI
3.
1952 Dodge*
2
2,574.22
4.
1952 Oldsmobile
3
3,395.84
THADDEUS JESIONOWSKI
5.
1947 Dodge**
1
1,450.00
6.
1952 Dodge
2, 3
2,606.79
WALTER JESIONOWSKI
7.
1951 Dodge
1, 2, 3
2,277.27 The useful life of each of the automobiles above was four years. During the years in question John owned commercial property on Congress Street in Schenectady which Ideal rented from him for use as the main factory premises. In 1952 he purchased commercial property on Grand Street in Albany which was rented by Ideal and used as a warehouse. *202 As indicated above, Ideal's income tax returns for the years in question report only a gross rental amount. In his income tax returns for the years in question John reported rental received from Ideal for the Congress Street property of $2,000 in 1951, $2,000 in 1952 and $4,000 in 1953 and for the Grand Street property of $36 in 1952 and $4,916 in 1953. In Ideal's notice of deficiency for 1953, of the amounts claimed by Ideal as rental expense deductions, respondent disallowed $2,000 for the Congress Street property and $2,916 for the Grand Street property. Ideal owned no automobiles during the years in question. Transportation of parts or personnel was done in the automobiles rented from the several Jesionowskis. Machinery too large for the automobiles was transported by third-party freight haulers. In its income tax returns for the years in question, Ideal deducted amounts as automobile expenses. Respondent's statutory notice disallowed these amounts in their entirety. During the years in question the individual Jesionowskis claimed depreciation deductions on the various machines owned by them and rented to Ideal. Depreciation was computed on each machine by the straight *203 line method. On their income tax returns they assigned useful lives to the various machines acquired after 1951 of two to four years. Respondent, in the Jesionowskis' notices of deficiency, disallowed as excessive, portions of the depreciation deductions claimed. In the explanations of adjustments accompanying the statutory notices respondent, on some of the items of machinery, adjusted costs of acquisition and on all machinery increased the useful life to ten years and computed no salvage value. During all of the years in question John claimed as deductions amounts expended for repairs to the machinery he owned. Casimer claimed a similar deduction in 1953. Respondent, in his deficiency notices, disallowed all said amounts for lack of adequate substantiation. During some of the years in question Thaddeus, Walter, Henry and Casimer claimed depreciation deductions on the automobiles owned by them and rented to Ideal. On their income tax returns they based the computations of depreciation on the assumption that the automobiles were used solely for business purposes. Respondent, in his several deficiency notices, disallowed as excessive, portions of the depreciation deductions claimed. *204 In the explanations of adjustments accompanying the statutory notices, respondent adjusted depreciation by allowing only 50 per cent of the use of said automobiles as being used for business purposes. During some of the years in question the Jesionowskis claimed deductions on their income tax returns for operating, repair and maintenance expenses on the automobiles they rented to Ideal. Respondent, in the several deficiency notices, disallowed all said deductions for lack of adequate substantiation. The following schedule shows the amounts the Jesionowskis claimed were expended in the operation of their automobiles for the use of Ideal during the years in question, all of which were disallowed by the Commissioner, and the amounts to be allowed as deductions for said use. Operating expenses
claimed
by petitioners, all of
Operating Expenses
which
Owner
were disallowed by
as found by the Court
respondent
1951
1952
1953
1951
1952
1953
Casimer Jesionowski
0
$360.24
$728
$100
$125
$125
Thaddeus Jesionowski
$ 296
398.00
588
100
125
125
Henry Jesionowski
0
390.00
571
125
125
Walter Jesionowski
208
450.00
650
100
125
125
*205 Prior to November 22, 1950, Catherine Jesionowski, John's wife, owned a lot with a house on Chrisler Avenue in Schenectady. The house contained several apartments, in one of which John and Catherine Jesionowski lived. It was subject to a mortgage of $11,000 for which John was the mortgagee. In 1950 Thaddeus was planning to be married. On November 22, 1950 Catherine Jesionowski, by duly recorded deed, transferred the said property to Thaddeus subject to the mortgage. Catherine Jesionowski expected that Thaddeus would occupy the premises after his marriage. After the transfer Thaddeus collected the rent from the tenants and managed, maintained and repaired the property. He reported income from rent on the property in his income tax returns for the years 1951, 1952 and 1953. During these years Thaddeus took deductions for depreciation, repairs and other expenses on the property. After his marriage Thaddeus and his wife decided not to occupy the said property. On August 18, 1953 Thaddeus, by duly recorded deed, reconveyed said property to Catherine Jesionowski subject to John's mortgage. John and Catherine Jesionowski, in their joint income tax return for 1953, reported rental *206 income from said property and deducted amounts for depreciation, repair and other expenses. Respondent, in John's and Thaddeus' notices of deficiency for 1951, 1952 and 1953, excluded the rent and deductions for depreciation and repairs on the Chrisler Avenue property from Thaddeus' income tax returns and included them in John's. Both of the above transfers were bona fide transfers by gift. Thaddeus was the true owner of the Chrisler Avenue property between November 22, 1950 and August 18, 1953. Catherine Jesionowski, or John and Catherine Jesionowski, had no beneficial interest in the property during said period which would cause the rental income from the property to be attributable to them. All of the individual Jesionowskis claimed certain itemized deductions in their income tax returns for 1953 which were disallowed by respondent's notices of deficiency. In their several petitions Henry, Thaddeus and Walter challenged the determination of deficiency in respect to the itemized deductions. The following table shows deductions claimed and the amounts allowable: Henry Jesionowski
Thaddeus
Walter Jesionowski
Jesionowski
Itemized
Amount
Amount
Amount
Amount
Amount
Amount
Deductions
Claimed
Allowable
Claimed
Allowable
Claimed
Allowable
Contributions
$101.00
$ 50
$340.00
$100.00
$180.00
$ 90.00
Taxes
229.54
10
188.61
160.61
163.01
118.01
Casualty Loss
150.00
150
52.00
0.00
304.11
50.00
Medical
190.53 *
80 *
972.00 *
455.09 *
695.71 *
415.31 *
Miscellaneous
205.00
20
115.00
20.00
704.00
30.00
*207 Respondent determined additions to tax for the several petitioners for substantial underestimation of estimated tax and for failure to file a declaration of estimated tax on time under sections 294(d)(2) and 294(d)(1)(A), Internal Revenue Code of 1939, for the years in question. Petitioners did not have reasonable cause for failure to file declarations of estimated tax for the years 1951, 1952 and 1953. Opinion The questions presented are primarily ones of fact. The individual petitioners were members of a family unit which made use of the corporate petitioner to carry on the family business. In such a situation it is to be expected that when the family members deal with their corporation such dealings will be scrupulous and exact and records of at least a rudimentary sort will be kept to separate individual from corporate transactions and to record and tally corporate dealings, especially with related shareholders and officers. If such records are kept they should be produced. Failure to keep or to produce such records or even to show a clear indication that such records were once kept casts, at the outset, a questionable aura about such transactions. *208 If, for some good reason, oral testimony must be substituted for clear records, although petitioners' burden of proof is not changed or increased, it is incumbent upon them to produce testimony which is pertinent, clear, definite and concise. Vague, inconclusive, unresponsive testimony from related corporate officers concerning dealings in their own interest with their own corporation imparts something less than a clear ring of persuasiveness to the record. Such testimony abounds in the record before us. The first issue concerns the amount of rental paid by Ideal to the several Jesionowskis. Respondent does not contest the ownership by the Jesionowskis as individuals of the various machines with the exception of several machines owned by Thaddeus. Respondent's determination of deficiency in 1952 and 1953 for Thaddeus challenged his ownership of all machinery on which he claimed a depreciation deduction. At trial Thaddeus testified to his ownership of certain machinery and we have accepted his testimony. In addition, in his 1952 and 1953 income tax returns Thaddeus reported $4,250 and $5,100, respectively, as income from machinery rental which respondent did not disturb. In respondent's *209 computation of the allowable rental expense deduction for machinery rented by Ideal, in Ideal's notice of deficiency for the years 1951, 1952 and 1953, Ideal is allowed a rental expense deduction for machinery rental paid to Thaddeus in the amount of $490 for each year. Respondent there computed said amounts as 20 per cent of the cost of machinery owned by him. Our findings of fact set forth the machinery we have found Thaddeus owned. Our findings of fact, based on evidence and exhibits, indicate that Thaddeus rented machinery in 1951, 1952 and 1953. The Commissioner, by his adjustment, admits Thaddeus rented some machinery in 1951. The testimony is too vague to make any findings as to the specific machines owned by Thaddeus in 1951 and rented to Ideal. However, since the Commissioner has seen fit to allow Ideal $490 rental for Thaddeus' machines in 1951, we have done the same. The findings set forth the specific machines he owned in 1952 and 1953. Respondent maintains that the rental paid by Ideal for the use of the Jesionowskis' machinery was excessive and in Ideal's notice of deficiency made downward adjustments of this item primarily by computing the rental at a rate of 20 per *210 cent of the cost of the machines per year. With the exception of the original cost of several machines, petitioner has not introduced evidence from which this Court can find respondent's determination incorrect or that Ideal's original treatment was correct. The only indication of the amount Ideal paid for machinery rentals is the amount reported by the individual Jesionowskis on their tax returns. Both parties seem to assume that the amounts reported as received by the individual Jesionowskis represent amounts paid by Ideal as rental for machines, automobiles and real property. As indicated in the findings of fact, the amounts on Ideal's return and the total reported as received by the Jesionowskis differ slightly. The machines were rented by an oral agreement between the Jesionowskis as individual machine owners and the Jesionowskis as officers of Ideal. John testified concerning the rental rate of the machinery as follows: "Q. How did you compute the rental on machinery? "A. We generally compute this by the number of hours that the machine is being used. * * *
"Q. How did you compute the hours during a year? "A. Well - "Q. Some of the machines run - "A. Most *211 of them run as much as 50 cents an hour, 25 cents an hour, so anyway, I would be paid about one third of the cost of the machines. * * *
"A. We always based it that the machine will have to be paid back and when we had a job, we always based it that the expense of the machines is going to be clossal and who is going to invest money to make it possible. So under this agreement if we had orders for certain jobs we bought the machines for the job - and the job is over, the machines are useless. * * *
"Q. Assuming you did keep hours on the machinery, how did you determine the rental on the different types of machines? "A. Mostly, it is on the price of a machine. * * *
"A. Only the price of each machine would be about one third of cost, I don't keep any records." If John's testimony is taken to mean that rental was computed at a rate of one-third of the cost of his machines per year, then his tax returns for 1951, 1952 and 1953 do not support his contention. In 1951 John rented machines to Ideal which he listed on his 1951 return at a cost of $18,263 and reported rental paid of $3,700 - slightly more than 20 per cent of claimed cost. Respondent determined rental *212 for 1951, using 20 per cent of the same cost and allowed $3,652.60. In 1952 John rented machines which he listed on his return for that year at a total cost of $39,200 and reported rental received of $18,650 - about 48 per cent of claimed cost. Respondent determined rental for 1952, using 20 per cent of a cost of $30,700 and allowed $6,140. A similar disparity is evident for 1953. If, on the other hand, John's testimony is that machinery rental was computed either on an hourly basis or by the job, then there is no evidence that the working hours of the machines were recorded in any manner nor, in the alternative, is there evidence of the number or duration of the jobs or of the individual machines employed in them. Neither are there even any estimates of these facts in the record. The testimony of the other Jesionowskis is similarly vague. Henry, for example, testified that the machines were rented "specifically, I would say just for the job." Nowhere in the record is it satisfactorily shown how the specific amounts of machinery rental paid the Jesionowskis were determined. On the whole, the evidence is too vague and inconclusive to permit this Court to find facts which would *213 sustain petitioner Ideal's contention. We, therefore, sustain respondent's determination that Ideal's rental expense deduction should be determined by allowing 20 per cent of the cost of the machinery as its rental value. The parties disagreed as to the cost of several machines. The findings of fact, based on evidence of record, set forth the cost of the machines. Ideal's notice of deficiency showed the disallowance as an expense deduction of amounts paid to the Jesionowskis for rental of automobiles in excess of one-third of the cost of the automobile. The rental agreements were oral. The Jesionowskis as officers of Ideal agreed to rent the automobiles from the Jesionowskis as owners of the automobiles. Several of the Jesionowskis testified that Ideal rented the automobiles on a mileage basis. No records of mileage were produced and Casimer testified that none were kept. Testimony of estimates as to mileage driven during the years in question was vague and offhand. In addition, there was no showing of any rental rate, per mile or otherwise, agreed upon, established or paid by Ideal. Petitioners have not shown respondent's determination erroneous. Accordingly, we accept respondent's *214 rental rate of one-third of cost. There is some dispute between the parties as to the number of automobiles owned by the Jesionowskis. In the findings of fact, based on testimony and exhibits, we have determined the number of automobiles and original cost of each. Ideal's notice of deficiency for the year 1953 disallowed as a business expense deduction $2,000 for rental paid by Ideal to John for the Congress Street factory premises in Schenectady and $2,916 of the rental paid John for a warehouse on Grand Street in Albany. John's income tax returns for 1951 and 1952 show that he reported a rental of $2,000 per year for the Congress Street premises. His 1953 return shows a rental reported for said premises of $4,000. John testified that he purchased the Grand Street premises in 1952. His income tax returns show rental reported for the Grand Street property of $36 in 1952 and $4,916 in 1953. Ideal's tax returns show only gross rental expense of $36,570 in 1952 and $38,167.05 in 1953; they do not show the individual lessors of items rented nor do they show an itemization of the gross amounts paid. Ideal offered no evidence of what would be the normal or reasonable rent for this property *215 and practically ignores the issue in the briefs. Ideal has not shown respondent's disallowance of $2,000 for the Congress Street property and $2,916 for the Grand Street property in 1953 was improper. We sustain respondent's determination on this point. The second issue concerns automobile expenses deducted by the corporation. Ideal, in its income tax returns for 1951, 1952 and 1953, deducted amounts for automobile expenses. There is no evidence that Ideal owned any motor vehicles during the years in question. The individual Jesionowskis maintained and operated their automobiles at their own expense in return for which they received rental from Ideal. No adequate explanation of Ideal's claimed automobile expense deductions appears in the record. Consequently, we sustain respondent's determination disallowing all amounts deducted by Ideal as automobile expense other than the rentals discussed above. The third issue concerns amounts deducted by the individual Jesionowskis for depreciation, operation and maintenance expenses. The several Jesionowskis in their tax returns for the years in question claimed depreciation deductions for the machines they owned and rented to Ideal. Respondent *216 in his notices of deficiency assigned a 10-year useful life to every machine acquired during and after 1951 and made some adjustments in original costs. The Jesionowskis, in the depreciation schedules appearing on their income tax returns, used useful lives of from two to four years for most of this machinery. The individual Jesionowskis have failed to prove respondent's determinations of useful life erroneous. John's testimony on this point is at best confused and vague. He apparently contends that because some of the machines were 20 or 30 years old when purchased and were operated for longer periods than they would normally be operated during the years in question, he is entitled to a very low estimated useful life. In summary, John's testimony seems to be that he purchased old machines not suitable for precision work; that Ideal operated 22 hours per day, seven days a week during the years in question; that some of the machines in question are not in use today and therefore their useful life at the time of acquisition was two or three years. John's testimony concerning the machines themselves in reality is only that some of them were "old" when purchased. Depreciation was computed *217 by the unit method on a straight line basis. There is no showing as to the individual condition of the machines at the time they were acquired. Ideal and the Jesionowskis together owned about 50 machines during the years in question. Respondent on brief has pointed out that given Ideal's payroll and the Jesionowskis' estimates of the work force of Ideal, it is incredible to believe that Ideal was in full operation even 14 hours per day, let alone 22 hours. In addition, there is no showing that all the machines were in continuous operation or would reasonably have been expected to be in operation for such extended periods as claimed. There is no showing that the increased working time of Ideal resulted in increased use for any single machine which would result in materially decreasing the normal useful life of the machine. Nor, for that matter, is there any indication of what the useful life of any of the machines would be under more normal operating conditions. No records of any sort have been introduced to show Ideal's output or that of any of the machines. No estimates to this effect were given by any of the witnesses. The evidence introduced by the other Jesionowskis as machine *218 owners was substantially the same as John's with the exception of Henry, who testified that the useful life of a machine was "as long as the job lasted". If Henry was depreciating his machine over the length of the job, assuming, arguendo, that this is an acceptable method of determining depreciation for income tax purposes, there has been no relation of the machine to any job or jobs done by Ideal. We sustain respondent's allowance of a 10-year useful life because petitioners have failed to prove this determination erroneous. Respondent, in Thaddeus' notice of deficiency, challenged Thaddeus' ownership of several machines. We have set out in the findings of fact the machines he owned and explained this finding in the discussion of the machinery rental issue above. Respondent's statutory notice challenged only Thaddeus' ownership of the machines in question. No adjustment was made in depreciation claimed in the event the Court found Thaddeus did own the machinery. Evidence was presented from which the findings of fact as to cost were made. Without a showing to the contrary, Thaddeus is entitled to depreciation deductions on his machines based on a 10-year useful life. Several other *219 machines were proved to be owned which respondent did not take into account in the statutory notice. No specific evidence of useful life for these particular machines was shown. Depreciation will be based on a 10-year useful life. As indicated above, the parties differed at several points on the original costs of various machines. We have examined testimony and exhibits, made the necessary findings and set them out in the findings of fact. The depreciation on Casimer's machine is not in issue. It has been included in the findings of fact for the purpose of computing Ideal's rental deduction. Depreciation on John's and Walter's machinery only is in issue for the year 1951. John and Casimer for several of the years in question claimed amounts as deductions for expenditures for machinery repairs. Respondent disallowed these amounts for lack of adequate substantiation. At trial John and Casimer testified that such repairs were made and estimated the amounts, leaning heavily on the amounts that they had set out on their income tax returns for the years involved. There is some evidence to the effect that the machines on which the repairs were allegedly made were old at the time of *220 acquisition and that at least some of them were subject to heavier use than under normal operating conditions. However, as indicated in our discussion above, there is no indication of the condition of the machines at the time of their acquistion or during the taxable years in question. There has been no showing of any specific repairs that were necessary to these machines nor any introduction of bills or records that would provide the buttressing which the individual testimony in this particular case requires. Petitioners have failed in their burden of proof on this issue and respondent is accordingly sustained in disallowing amounts claimed as deductions for repairs. The four Jesionowskis who owned automobiles depreciated them individually on a straight line basis using, generally, a useful life of about four years and claiming all depreciation as a business expense deduction. Respondent in the several statutory notices, decreased said claimed deductions by assigning 50 per cent of the use of each automobile to business purposes but accepted the useful lives claimed. The Jesionowskis each testified individually that their several automobiles were available 22 hours per day seven *221 days a week for use by Ideal and that 95 per cent of their use was for business purposes. No records or evidence other than their testimony was offered to substantiate the amount of time or the number of miles it is claimed the automobiles were used by Ideal. We approach the several petitioners' testimony on this point with some degree of skepticism. When this testimony is given its correct weight, we hold the several petitioners have failed to prove incorrect respondent's allowance that only 50 per cent of the automobiles' use was devoted to the business of Ideal. The parties disagree on the number of automobiles owned by Casimer and used in the business. We have examined the evidence on these points and set forth our findings in the findings of fact. The evidence shows that during the years in question Henry traded his 1952 Dodge for a 1952 Oldsmobile and that Thaddeus traded his 1947 Dodge for a 1952 Dodge. The Rule 50 computation will reflect the basis adjustments necessitated by these transfers. Automobile depreciation has been placed in issue in 1951 by Walter only and in 1952 and 1953 by Casimer, Walter, Henry and Thaddeus. The Jesionowskis (with the exception of John) claimed *222 as deductions certain amounts for operating expenses of their automobiles during some of the years in question. Respondent disallowed all such deductions for lack of adequate substantiation. At trial the several Jesionowskis offered their individual testimony of the approximate amounts they expended for operating expenses. Respondent in his arguments as indicated above has accepted the fact that the Jesionowskis rented Ideal the automobiles for business purposes. Amounts expended for their operation and maintenance are deductible as business expense to the extent that autos were devoted to business purposes. Using the rule of Cohan v. Commissioner, 39 F. 2d 540, we have set forth in our findings of fact amounts to be allowed for said expenses for the years in question. Henry's 1953 income tax return claims automobile expenses of $571 and automobile repairs of $65. Respondent's statutory notice for 1953 does not disallow the $65 item and it is therefore not in controversy. The Jesionowskis on their income tax returns, in addition to operating expenses, claimed that they spent certain sums for automobile repairs and maintenance during the years in question. The only *223 acceptable corroboration of these claims in the record is their own testimony, often little more than a parroting of the amounts which appear on their tax returns. Under the facts of this case such evidence in an insufficient showing to meet their burden of proof and we sustain respondent in disallowing all amounts claimed as deductions for repairs. In the fourth issue the parties have stipulated that the sole question for decision is the ownership of residential rental property located on Chrisler Avenue in Schenectady. We have set out in the findings of fact the pertinent circumstances. Respondent argues that the transfer was a sham designed to remove the rental from John and Catherine Jesionowski's income, to place it in Thaddeus' income for the years in question, to decrease the useful life of the property upon its retransfer to Catherine Jesionowski and thus increase the annual depreciation deduction. After undertaking the careful scrutiny of the facts which respondent urges must be directed toward intra-family transactions, we find no basis for respondent's contention. The deeds show the transfer from Catherine Jesionowski to Thaddeus took place on November 22, 1950, and *224 from Thaddeus to Catherine Jesionowski on August 18, 1953. Thaddeus testified that the transfer was motivated by his then forthcoming marrage. We have accepted his testimony as to the impetus for the transfer to him. We have further accepted his testimony that when his wife refused to live at the Chrisler Avenue premises he returned it to his mother in the same fashion he received it - by gift. Thaddeus was the bona fide owner of the Chrisler Avenue premises and neither Catherine Jesionowski nor John and Catherine Jesionowski retained any beneficial interest in the property which would cause the rental from the property to be taxed to them. At the very least, the introduction of the deeds, plus Thaddeus' testimony, are enough to rebut respondent's presumption of correctness. At trial respondent introduced no evidence to support his argument. The petition placed in issue several questions concerning deductions for repairs, depreciation and other expenses on the Chrisler Avenue property. The parties by stipulation have reconciled all questions concerning the Chrisler Avenue property except that of the ownership of the premises and of the rental paid by Ideal to John for the Congress *225 Street and Grand Street properties discussed above. The fifth issue for decision deals with itemized deductions. All of the Jesionowskis claimed certain itemized deductions on their income tax returns for 1953 which were disallowed by respondent generally for lack of adequate substantiation. All gave testimony at trial concerning the said deductions. The petitions for John and Casimer do not put the amounts of the itemized deductions in issue. Henry, Walter and Thaddeus offered some evidence which tends to substantiate several of their claims for said deductions. The said petitioners offered their individual testimony about certain other itemized deductions. On the basis of the evidence and testimony we have made the findings of allowable itemized deductions which appear in our findings of fact above. The parties have settled by stipulation certain questions placed in issue by the pleadings dealing with the treatment and amounts of repairs and expenses on certain property located at Hartford, Connecticut; Grand Street in Albany, New York; Chrisler Avenue and Congress Street in Schenectady, New York, and State Street in Albany, New York. Some items of adjustment in the several deficiency *226 notices, though to some extent argued at trial and on brief by petitioners, were not placed in issue by the several petitions, and, therefore, do not require consideration by this Court. In the sixth issue, in the notices of deficiency, respondent determined additions to tax in the years in question for the several Jesionowskis under section 294(d)(1)(A) for failure to file a declaration of estimated tax. Petitioners do not contend that they had reasonable cause for not filing. The additions to tax under section 294 (d)(1)(A) are approved as revised to reflect our conclusions on the decided issues. Respondent also determined additions to tax for substantial underestimation under section 294(d)(2). These additions are denied, since no declarations were filed. Commissioner v. Acker, 361 U.S. 87. Decisions will be entered under Rule 50. Footnotes
1. The following proceedings are consolidated herewith: John Jesionowski and Catherine Jesionowski, Docket No. 67834; Casimer Jesionowski, Docket No. 67835; Henry Jesionowski, Docket No. 67836; Thaddeus F. Jesionowski, Docket Nos. 67837, 67838; Walter Jesionowski and Mary Jesionowski, Docket No. 67839 and Walter Jesionowski, Docket No. 67840.↩
2. All section references are to the Internal Revenue Code of 1939, as amended.↩
3. No income tax return for the year 1951 is in evidence for Henry Jesionowski.↩
3. No income tax return for the year 1951 is in evidence for Henry Jesionowski.↩
4. See footnote 3, supra.↩
*. Car No. 3 traded in on car No. 4. ↩
**. Car No. 5 traded in on car No. 6.↩
*. Gross amount.↩